KREGELO v. ADAMS, Assignee, etc.

(*Circuit Court, D. Indiana.* ——, 1880.)

1. LIEN—SECOND EXECUTION—LAWS OF INDIANA.—Under the laws of Indiana the "timely" issue of a second execution does not continue the lien of the first execution, in the absence of a levy under such first execution.

Appeal from the District Court.

*Claypool, Newcomb & Ketcham,* for appellant.

*John R. Wilson,* for appellee.

DRUMMOND, C. J. This is a controversy between two execution creditors of the bankrupt's estate, and it presents a very singular state of facts and questions, by no means free from difficulty, and I regret, as it is a question which arises exclusively under the law of Indiana, that there is no decision of its supreme court which throws any light upon the question.

The assignee of the bankrupt came into possession of personal property belonging to the estate, which was sold by him, and the proceeds of which are now in his hands.

At the time of the bankruptcy there were executions against the bankrupt, issued out of the courts of the state, which it is claimed were liens upon the property, and the assignee holds the proceeds subject to the claim of one of the creditors.

I will state briefly the facts which give rise to this controversy: On the eighteenth of October, 1877, English issued an execution on a judgment which he had obtained against the bankrupt, and placed the execution in the hands of the sheriff of Marion county. This execution, under the law of the state, had 180 days to run. On the sixteenth of April, 1878, when the time had expired, the execution was returned by the sheriff for renewal, without any direction from the plaintiff. On the same day—the sixteenth of April—an *alias* execution was issued, and was placed in the hands of the sheriff on the morning of the seventeenth of April, at half-past 9 o'clock. Kregelo, another creditor, who had obtained a judgment against the bankrupt on the twenty-first of February,

1878, then issued an execution on that judgment and placed it in the hands of the sheriff of Marion county.

It is claimed by English that the second execution, which was issued on his judgment on the same day that the first was returned, continued the lien which the law gave upon the first, so as to cut off Kregelo's execution, which, at the time the second of English's executions was issued and placed in the hands of the sheriff, was also in the sheriff's hands. In other words, it is claimed that if the second execution is "timely" issued, as it is stated by some of the text writers, it operates to continue the lien which the first execution has obtained, so as to cut off an execution held by the sheriff at the time the second execution comes to his hands.

The question in this case is whether that is the law under the statutes of Indiana. 2 Davis' Rev. St. § 413, p. 200, declares that "when an execution against the property of any person is delivered to an officer to be executed, the goods and chattels of such person within the jurisdiction of the officer shall be bound from the time of the delivery."

The 415th section requires that "the sheriff receiving an execution shall indorse thereon the year, month, day, and hour when he received it."

Section 453 declares that, "when any property levied on remains unsold, it shall be the duty of the sheriff, when he returns the execution, to return the appraisement therewith, stating in his return the failure to sell, and the cause of the failure."

The 454th section declares that "the lien of the levy upon the property shall continue, and the clerk, unless otherwise directed by the plaintiff, shall forthwith issue another execution, reciting the return of a former execution, the levy, and failure to sell, and directing the sheriff to satisfy the judgment out of the property unsold, if the same is sufficient. If not, then out of any other property of the debtor subject to execution."

In this case there was no levy made on the first execution, and I have come to the conclusion, taking all these provisions of the laws of this state into consideration, that the second

execution of English in this case did not continue the lien which the first had acquired, and that the execution which was issued by Kregelo between the date of the English first execution and the second has the priority of lien. It seems to me that that is the simplest and most satisfactory view to take of the question—the one freest from difficulties and complications of various kinds. In that way only can we carry out the spirit of the law of this state in reference to executions. When an execution is delivered to an officer, the personal property of the defendant is bound, if within the jurisdiction of the officer, but it is bound how long? Does it continue after the return of the execution, if no levy is made upon the property? I think not. It seems to me that when an execution is returned that it ceases to operate by way of a lien upon personal property, and the language of the statute gives emphasis to this view of the question. It declares that when, under an execution, there shall be a levy upon the property, and it is returned, the lien shall not be lost, but that it shall continue. It makes no such declaration where there is no levy made. It does not continue any lien to the second, which the first execution created, upon the personal property. It expresses in the one case that the lien continues, and it says nothing about it in the other. This argument is not without force.

Again, it seems to me that, if we hold an execution continues a lien under the law, we involve ourselves in inextricable difficulties and embarassments. It is stated in some of the authorities, and by some of the text writers, that if a second execution issues "timely" it continues the lien. How much time is to elapse before a second execution shall issue in order to continue the lien? What is meant by the word "timely?" Does it mean a week or a month? How much of that which we call time must there be, in order that a second execution may be said to be "timely?" In this case there was only an interval of a day. The execution was returned on the sixteenth of April, and an *alias* came into the hands of the sheriff on the morning of the seventeenth. Now, it is to be observed that the execution issued on the sixteenth had, *per*

*se,* no effect upon the property of the defendant until it was delivered to the hands of the sheriff, because it is only from that time it becomes a lien upon personal property. And, if it is not so, how long may an execution, when issued, lie in the clerk's office, or in the hands of the plaintiff or his counsel, before it is delivered to the sheriff, in order that the lien shall be continued? If it may remain there a day, why not a week, or a month, or an indefinite time? Is it a mere matter of discretion how long it shall be before the execution shall be delivered to the officer in order to continue a lien by virtue of a first execution? Is it not much simpler and clearer, and more in accordance with the intent of the law-makers, to say that an execution, if there has been no levy made, which is issued secondly, only operates, as the first did, from the time it comes to the hands of the officer? The law makes no distinction between an *alias* and an original execution. It does not say that the first shall be placed in the hands of an officer in order to make a lien, and the second shall not be. It says, in effect, all executions, in order to be binding upon personal property, shall be placed in the hands of the officer. And it requires, as to the second execution, the same as the first, that the officer shall indorse upon it the year, the month, the day, and the hour when he received it.

But it is said that it would have made no difference if the execution had been delivered to the officer on the sixteenth of April, instead of on the seventeenth. That may be true. It only follows as a necessary consequence, from what has been said, that, where there is no levy as to personal property, the lien which the first execution created ceases when it is returned; and in order that there shall be a lien through another execution, it must be delivered to the officer.

As I have said, this is a nice question. The authorities do not agree upon all of the questions which have a bearing upon this one before the court. I decide it upon what I consider the true construction of the law of Indiana, which, I think, is binding upon the court in this case. And, in this respect, I differ from the district court, and the order which was made giving priority to the English execution will be reversed.